**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**The Connor Group, A Real Estate Investment Firm, LLC,**

       *Plaintiff*,

v.

**Case No. 3:17-cv-00246-TMR
Judge Thomas M. Rose**

**Certain Underwriters at Lloyds, London Subscribing to Policy No. B128413102W16,** *et al.*,

       *Defendants*.

---

**ENTRY AND ORDER GRANTING MOTION OF DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND ASPEN SPECIALTY INSURANCE COMPANY TO DISMISS WITHOUT PREJUDICE THE ACTION OF PLAINTIFF, THE CONNOR GROUP FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6), DOC. 11, AND TERMINATING THIS CASE**

---

Before this Court is a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure (F.R.C.P.) 12(b)(6). Plaintiff The Connor Group ("Connor Group") seeks a declaratory judgment regarding Defendants' liability under the insurance policies agreed to by the parties. Defendants Certain Underwriters at Lloyd's, London ("Lloyd's") and Aspen Specialty Insurance Company ("Aspen") have filed a motion to dismiss the action for failure to state a claim in accordance with F.R.C.P. 12(b)(6). Doc. 11.

**I.    Background**

Plaintiff Connor Group is a real estate investment firm headquartered in Miamisburg, Ohio. Doc. 1, ¶ 2. Connor Group, through its corporate affiliates and investor members, owns

Villages of Addison Apartments in Dallas, Texas as tenants in common. Doc. 1, ¶ 14. Lloyd's is an insurance underwriting organization located in London, England, however they stipulated in their insurance policy agreement with Connor Group that service of process may be served upon them in the state of New York. Doc. 1, ¶ 3. Aspen is an insurance company incorporated in the state of North Dakota with its principle place of business in the state of Connecticut. Doc. 1, ¶ 4.

As owners of Villages of Addison Apartments, Connor Group purchased commercial property insurance policies from Lloyd's (Policy No. B128413102W16) and Aspen (Policy No. PRAG48V16), both of which were in effect from February 26, 2016 to February 27, 2017. Doc. 1, ¶¶ 7-8. Connor Group's policy with Lloyd's provides coverage for damage to their real and personal property while the Aspen policy provides coverage for buildings and business property. Doc. 1, ¶¶ 9-10. The policies each contained a $5,000,000 limit per occurrence and make their respective insurers responsible for 50% of the overall risk. Doc. 1, ¶¶ 11-12. Furthermore, the policies stipulated the presence of a $500,000 deductible for each occurrence for which a claim is based upon. Doc 1-1 PageID 17. On December 28, 2016, Connor Group submitted an insurance claim for property damage that allegedly had occurred as a result of a hail storm on March 23, 2016. Doc. 1, ¶¶ 16, 18. On November 21, 2016, Connor Group sold the property in question to Advenir at Addison LLC ("Advenir") and subsequently assigned the insurance claim to them on February 9, 2017. Doc. 1, ¶¶ 17, 21. The claim was eventually assigned back to Connor Group by Advenir on July 20, 2017 (Doc. 1, ¶ 22) in consideration for Connor Group's release of $500,000 in escrow funds to Advenir. Doc. 1, ¶ 23; Doc. 1-4 PageID 215.

Following the initial filing of the insurance claim, Lloyd's and Advenir appointed York Risk Services Group ("York") as a claims adjuster, who then contracted United Building

Sciences ("UBS") to inspect the property. Doc. 1, ¶ 19. The property was inspected January 3 and 4, 2017 and was re-inspected on January 25, 2017 at the request of Connor Group. Doc. 1-5 PageID 218. A representative of Needham Roofing ("Needham") was present on behalf of Advenir at the re-inspection. Doc. 1-8 PageID 261. Connor Group and Advenir both dispute many of the findings that York and UBS made during their investigations of the property. *See* Doc. 1-9.

Following UBS' finding that the roof damage was "likely caused by multiple storms" (Doc. 1-8 PageID 265), York cited multiple incidences of hail from the time when Connor Group acquired the property in 2014, noting that such incidents would count as separate occurrences pursuant to the policies and each be subject to the $500,000 deductible under said policies. Doc. 1-5 PageID 224. Additionally, York reported the possibility that the roof had "inherent defects" that contributed to the ultimate damage that occurred. *Id.* York subsequently pointed out that the insurance policies did not cover latent or pre-existing defects in the property. *Id.* Furthermore, York told Connor Group that hail damage was found only on the south and west portions of the roof of the property, and that the policies did not cover replacement of the north and east portions following a finding of no damage therein. *Id.* During re-inspection of the property, Needham identified possible incidences of hail damage on the north and east slopes of the roof. Doc. 1-9 PageID 268. In its report, UBS noted this and argued that these incidences were "anomalies" appearing to be "scrapes, scuffs, blisters, and mechanical impact" separate from hail damage. Doc. 1-8 PageID 264. UBS estimated the replacement cost value of the damage to be $618,880.22 with an actual cash value of $421,311.47. Doc. 1-6 PageID 228; Doc. 1-8 PageID 265. In regards to this, Advenir informed York that Needham had estimated the cost to replace the shingles of the entire property at $1.567 Million, and that UBS' price estimate was

insufficient to cover the repairs sought by Advenir as the future owners of the property. Doc. 1-9 PageID 269.  In spite of these discrepancies, Lloyd's and Aspen notified Connor Group of the aforementioned coverage and adjustment issues related to the claim (Doc. 11 at p. 2; Doc. 1, ¶ 26), which precipitated Connor Group's present action.

Following the estimated coverage allocation provided by Defendants, Plaintiff Connor Group seeks a declaratory judgment that Lloyd's and Aspen are obligated to provide insurance coverage for the full replacement of the roof and that only one deductible may be applied to such coverage.  Doc. 1 PageID 7-8.  Plaintiff further claims that Defendants' refusal to cover the roof's replacement cost constitutes a breach of contract for which they have suffered damages in the form of loss of insurance proceeds, attorneys' fees, and loss of escrow funds.  *Id.* at PageID 9.  Plaintiff further alleges that Defendants acted in bad faith by failing to properly investigate its insurance claim and ultimately withholding payment under the insurance policies.  *Id*. at ¶¶ 48-49. Accordingly, Plaintiff asks the Court to order the aforementioned declaratory judgment, along with enjoining Defendants from delaying or denying payment under the policies, awarding pre and post-judgment interest, as well as Plaintiff's costs and attorney fees related to the present action *Id.* at PageID 11.  Additionally, Plaintiff seeks punitive damages in regards to the claim of bad faith on the part of Defendants.  *Id.*

In response to Plaintiff's complaint, Defendants Lloyd's and Aspen filed a motion to dismiss for failure to state a claim under F.R.C.P. 12(b)(6), which is currently before the Court. At issue in the present motion to dismiss for failure to state a claim is the enforceability of the forum selection clause within the insurance policies given the presence of an additional service of suit clause within the aforementioned policies.  The forum selection clause in question states that "The parties irrevocably submit to the jurisdiction of the Courts of the State of New York"

(Doc. 1-1 PageID 49), while the service of suit clause states that in the event of a refusal to pay a claim, the insurer "will submit to the jurisdiction of a Court of competent jurisdiction within the United States." *Id.* at PageID 32). These endorsements are expressly provided within Connor Group's insurance policy with Lloyd's and is additionally incorporated into their insurance policy with Aspen. *See* Doc. 1-2 PageID 206. Plaintiff argues that the provisions of the service of suit clause supersede those of the forum selection clause and thus make Defendants amenable to suit anywhere in the United States. Defendants argue that the provisions of the service of suit clause do not serve to preclude the enforceability of the forum selection clause within the insurance policies and thus the instant action must be dismissed as against the express requirements of the forum selection clause.

## II. Motion to Dismiss

### A. Legal Standard

A motion to dismiss based upon a forum selection clause is to be assessed under Rule 12(b)(6) if that forum selection clause is valid and enforceable. *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 366 (6th Cir. 2008). Accordingly, the Sixth Circuit has allowed the use of Rule 12(b)(6) as a way to enforce motions to dismiss in cases where a forum selection clause limits jurisdiction to a state court. *May v. Ticketmaster Entm't, LLC*, No. 3:10–cv–00760, 2010 WL 4024257, at *4 (M.D. Tenn. 2010). In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the court only needs to determine whether the forum selection clause is enforceable and applicable; if it is, then the suit should be dismissed." *Id.* Furthermore, the Court must "accept as true all of the well-pleaded allegations of the complaint, construing those allegations in the light most favorable to the plaintiff." *Rossborough Mfg. Co. v. Trimble*,

301 F.3d 482, 489 (6th Cir. 2002). Additionally, there is no requirement that a complaint must include "detailed factual allegations," only that its statement of the grounds for entitlement to relief must rise above the level of a "formulaic recitation of the elements of the cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**B. Analysis**

At issue first in the Lloyd's and Aspen insurance policies is whether the forum selection clause is enforceable given the presence of the service of suit clause. Before this Court can analyze whether the forum selection clause on its face is enforceable, it must first determine whether it is enforceable together with the service of suit clause, or whether the enforceability of one precludes that of the other.

In its response to Defendants' motion to dismiss for failure to state a claim, Plaintiff argues that the provisions of the service of suit clause within the insurance policies modify those of the forum selection clause and allow suit anywhere in the United States. Doc 12 PageID 310. While the cases cited by Plaintiff clearly support the contention that a valid and unambiguous service of suit clause within an insurance contract serves to preclude removal of the action by waiving a party's right to removal (*GMS Mgmt. Co. v. Evanston Ins. Co.*, No. 1:14 CV 00424, U.S. Dist. LEXIS 18897, at *1 (N.D. Ohio Feb. 17, 2015); *City of Rose City v. Nutmeg Ins. Co.*, 931 F.2d 13, 15 (5th Cir. 1991); *Dinallo v. Dunav Ins. Co.*, 672 F.Supp.2d 368, 370 (S.D.N.Y. 2009), none of these cases necessarily address insurance policies containing both a service of suit clause and a conflicting forum selection clause within the same contract. Additionally, the present matter before the Court involves a Rule 12(b)(6) motion rather than one related to removal, and so the applicability of these cases is diminished accordingly.

Similarly, Defendants' reply to Plaintiff's response includes case law with fact patterns that do not neatly align with the one before this Court. *See* Doc. 13. Here too, Defendants cite a case concerning a party's right of removal when a forum selection or service of suit clause is present (*In re Delta America Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990)), as well as one where a service of suit clause is not accompanied by a separate forum selection clause. *Brooke Group Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635 (N.Y. 1996). In fact, the service of suit clause in *Brooke Group* conflicted with an arbitration clause rather than a separate forum selection clause. *Id.* at 637.

Plaintiff additionally relies on case authority evidencing a trend in courts allowing service of suit clauses to modify simultaneous forum selection clauses. *Rembrandt Enters., Inc. v. Ill Union Ins. Co.*, 129 F.Supp.3d 782, 786 (D. Minn. 2015); *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.,* 88 F.Supp.3d 1156, 1165 (S.D. Cal. 2015). While Plaintiff correctly states the findings of *Rembrandt* and *Tri-Union*, Defendants correctly point out that there exists a significant distinction between the insurance contract in *Rembrandt* and the policy terms between the parties in this case. *See* Doc. 13 PageID 324-25. The *Rembrandt* court ruled that the service of suit clause within the insurance contract in question precluded the provisions of the contract's forum selection clause because of the language preceding the service of suit clause, which stated "THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY." *Id.* at 786. In the present case however, as noted in Defendants' reply, no such cautionary language was present within the service of suit clause. In fact, the exact same declaration precedes the forum selection clause in the Lloyd's and Aspen policies rather than the service of suit clause as in *Rembrandt*. Doc. 1-1 PageID 49. Immediately prior to the forum selection clause in this case, the policies at issue state "THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ

IT CAREFULLY," mirroring the language used for the service of suit clause in the *Rembrandt* policy. *Id.* Likewise, the court in *Tri-Union* allowed the service of suit clause in that case to supersede the forum selection clause largely because of similar qualifying language preceding the service of suit clause. *Tri-Union*, 88 F.Supp.3d at 1164. As with *Rembrandt*, language qualifying the effect of the service of suit clause within the Lloyd's and Aspen contract was not present, but instead preceded the forum selection clause.

Applying *Rembrandt* and *Tri-Union* to the present case, it would logically follow that the language of the contract intended to ensure that the forum selection clause would not be undermined by the service of suit provision. This finding is further strengthened when considering the fact that the forum selection clause comes after the service of suit clause in the Lloyd's and Aspen insurance policies. *See* Doc. 1-1.

Seeing as how the service of suit clause and forum selection clause read together conflict the purposes effectuated by the other, the issue regarding which provision controls is largely one of contract interpretation. Plaintiff argues that interpretation of the insurance policies should primarily consider the intent of the parties when it was drafted. *See Whitt Mach., Inc. v. Essex Ins. Co.*, 377 Fed.Appx. 492, 496 (6th Cir. 2010); and *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 F.3d 821, 826 (6th Cir. 2012). Here, however, the intent of the parties is not so evident from surrounding circumstances as to warrant the determination that one interpretation clearly prevails, especially given the conflicting provisions within the contract. Defendants instead turn to case law regarding contractual interpretation of documents as a whole and in their entirety. *Safeco Ins. Co. of Am. v. White*, 913 N.E.2d 426, 430 (Ohio 2009). There is also case law cited in Plaintiff's own response conceding that "The intention of the parties must be derived instead from the instrument as a whole, and not from detached or isolated parts

8

thereof." *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1351 (Ohio 1982). In line with these canons of contractual elucidation, Defendants' interpretation of the insurance policies is the only one that can be inclusive of both the forum selection clause and service of suit clause simultaneously, while Plaintiff's reading of the contract renders the forum selection clause superfluous and without meaning.

Furthermore, the forum selection clause in and of itself is not inherently ambiguous in light of the endorsement disclaimer that precedes it. *See* Doc. 1-1 PageID 49. Again, Plaintiff's own case law in *Whitt Machinery* states that "where a policy endorsement conflicts with another policy form, the endorsement controls." *Whitt Mach.*, 377 Fed.Appx. at 497. As mentioned earlier, the endorsement disclaimer immediately precedes the forum selection clause within the policies but not the service of suit clause. *See* Doc. 1-1 PageID 32, 49. All of this leads to the conclusion that the forum selection clause within the insurance policies is unambiguous enough to allow its enforceability, and that its inclusion together with the service of suit clause is the only interpretation giving meaning to all of the contract's provisions.

As specified in *Dornoch* and alluded to in Defendants' reply (Doc. 13 PageID 321), the service of suit clause within the policies operates as an assurance that a foreign insurance services provider (Lloyd's of London) will be amendable to suit within the insured's country in the event of a payment dispute arising, while the forum selection clause specifies the exact agreed-upon forum within the United States where that dispute is to be settled. *Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F.Supp.2d 366, 370 (S.D.N.Y. 2009). Thus, the conflict between the forum selection clause and service of suit clause within Lloyd's of London insurance policies has been litigated previously. The Southern District of New York's determination of this issue in *Dornoch*, especially given that the

insurance policies in this case also provided that New York state law would govern the contract's interpretation (Doc. 1-1 Page ID 49), demonstrates the proper disposition of this particular dispute.

The Court notes that Plaintiff's use of *Wayne County* is also persuasive due to the similarities between its facts and the ones in the present matter. *Wayne Cty. Airport Auth. v. Allianz Global Risks US Ins. Co.*, No. 11-15472 2012 U.S. Dist. LEXIS 107578 (E.D. Mich. Aug. 1, 2012). However, the district court in that case found that a service of suit clause modified a forum selection clause because the endorsement surrounding the service of suit clause reserved a right of transfer, and such an endorsement was inapplicable since defendants were seeking dismissal under Rule 12(b)(6) rather than transfer of venue. *Wayne Cty. Airport Auth.*, No. 11-15472 2012 U.S. Dist. LEXIS 107578, at *8. Comparable language is found in the Lloyd's and Aspen service of suit clause and Defendants similarly seek dismissal rather than transfer, however the endorsement preceding the forum selection clause in the Lloyd's and Aspen policies (Doc. 1-1 PageID 49) distinguishes it from *Wayne County* and ultimately allows the forum selection clause to exist concurrently with the service of suit clause.

The U.S. Supreme Court has addressed the permissibility of forum selection clauses by noting that such clauses "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). The Court's acknowledgement of the validity of forum selection clauses emanating from the basic freedom to contract (*See Bremen*, 407 U.S. at 11) has proven relatively determinative in subsequent case law. In determining the enforceability of a forum selection clause on its face, the United States Court of Appeals for the Sixth Circuit looks to "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle

the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Furthermore, the burden of proving the unenforceability of a forum selection clause lies with the party contesting its enforceability. *Id.*

Under the first prong, the Sixth Circuit Court of Appeals has looked primarily to the formation of the contract to determine whether any sort of fraudulent inducement or overreaching by one party was present. *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 722 (6th Cir. 2006). Similar to *Preferred Capital* and *Wong*, there is no evidence before this Court in this case indicating that Plaintiff was not aware or was misled as to the presence of the forum selection clause within the policies. Accordingly, Plaintiff's challenge does not satisfy the first prong of the test determining the enforceability of a forum selection clause.

Under the second prong, the Sixth Circuit looks to whether the party subject to the forum selection clause would be treated unfairly in the forum provided therein. *Wong*, 589 F.3d at 829. It is not enough for a party to show that it is subject to less favorable law in the specified forum, but instead they must show the potential for unfair treatment. *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1230-31 (6th Cir. 1995). To this point Connor Group has only disputed the enforceability of the forum selection clause in light of the service of suit clause and has thus not alleged unfairness regarding New York as the forum. Consequently, the forum selection clause survives the second prong.

Finally, under the third prong, a forum selection clause must inconvenience the complaining party enough to essentially "deprive litigants of their day in court." *Preferred Capital*, 453 F.3d at 722 (quoting *Info. Leasing Corp. v. Jaskot*, 784 N.E.2d 1192, 1196 (Ct.

App. Ohio 2003)). Again, Plaintiff here does not claim that the state of New York would provide an unjust forum to litigate this dispute, but rather has sought to preclude the enforceability of the forum selection clause based on the conflicting provisions of the service of suit clause. We have already addressed the enforceability of the forum selection clause given the presence of the service of suit clause, and Plaintiff's failure to object to the fairness of New York as the forum state means that the forum selection clause in question satisfies the third prong of the test for enforceability.

The forum selection clause within the Lloyd's and Aspen insurance policies is enforceable despite the conflicting provisions of the service of suit clause within those same policies. The express endorsement preceding the forum selection clause evidences a clear intent that the service of suit clause not modify its provisions, including that the state of New York be designated as the proper forum. Furthermore, the forum selection clause on its face is enforceable as it was not obtained by fraud, does not designate a forum that would prove inherently unfair towards Plaintiff, and is not so inconvenient as to be an unjust forum to litigate this dispute.

### III.     Conclusion

Because the service of suit clause within the Lloyd's and Aspen insurance policies does not modify the forum selection clause within those policies and thus does not preclude their enforcement, and because the forum selection clause within the policies is permissible under the standard set forth by the Sixth Circuit in *Wong* (589 F.3d at 828), Defendants' motion to dismiss the present action for failure to state a claim pursuant to F.R.C.P. 12(b)6), Doc. 11, is hereby

**GRANTED**, and the action is dismissed without prejudice.  Accordingly, this action is hereby **TERMINATED** upon the docket of this Court.

**DONE** and **ORDERED** in Dayton, Ohio, Thursday, June 12, 2018.[1]

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDG

---

[1] The Court acknowledges the valuable contribution and assistance of judicial intern Matthew S. Hauer in drafting this opinion.